1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SYLVIA HERLING,

               Plaintiff,

      v.

WAL-MART STORES, INC., a Delaware
corporation; MICHAEL THANEM; and
HOLLAND RICKER,

               Defendants.

Case No.  C06-5672RJB

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

     This matter comes before the court on Defendants' Motion for Summary Judgment. Dkt. 40.
The court has considered the pleadings filed in support of and in opposition to the motion and the file
herein.

PROCEDURAL HISTORY

     On November 17, 2006, plaintiff filed a civil action against her former employer,
Wal-Mart Stores, Inc.(Wal-Mart), Michael Thanem, a pharmacist and manager of the Wal-Mart
pharmacy in Vancouver, Washington, and Holland Ricker, the manager of the Wal-Mart in
Vancouver, Washington.  Dkt. 1-1.  On March 20, 2008, she filed an amended complaint, alleging that
defendants (1) violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et
seq.* by discriminating against her on the basis of race or ethnic origin and sex; (2) violated her rights
under 42 U.S.C. § 1981 by denying her equal terms and conditions of employment based on her race

1  or ethnic origin; (3) retaliated against her and subjected her to a hostile work environment, in violation

2  of both Title VII and 42 U.S.C. § 1981; and negligently hired and retained defendant Michael Thanem

3  to supervise plaintiff and others in her department.  *Id.*

4  <u>MOTION FOR SUMMARY JUDGMENT</u>

5    On June 5, 2008, defendants filed a motion for summary judgment, contending that (1) plaintiff

6  cannot make out claims for retaliation under Title VII and the WLAD because she cannot meet her

7  *prima facie* burden of proof in that Wal-Mart had a legitimate reason to terminate her employment for

8  violating its Prescription Release Policy, and she cannot show that the decision was pretextual; (2)

9  plaintiff's race retaliation claim under 42 U.S.C. § 1981 fails because she cannot show that Wal-Mart

10  terminated her to perpetuate racial discrimination or for any other racially discriminatory reason; (3)

11  plaintiff's hostile work environment claim under Section 1981, Title VII and RCW 49.60 should be

12  dismissed because the conduct was not severe or pervasive; the conduct was not because of her race

13  or her gender; and the conduct was not unwelcome; (4) plaintiff cannot establish the elements of a

14  claim for negligent hiring; and (5) plaintiff cannot meet the standard required for punitive damages.

15  Dkt. 40.

16    In her response to the motion for summary judgment, plaintiff maintains that (1) she has shown

17  sufficient evidence that defendants had a retaliatory motive to fire her for complaints of a hostile work

18  environment because of sex, contending that she made protected complaints, the termination was close

19  in time with discipline that resulted from one of her complaints, the reasons for disciplining her were

20  pretextual, and the decision makers knew of her complaints; (2) the facts support her claim of

21  retaliation for her complaints about race-based discrimination; (3) she has shown sufficient evidence of

22  sex and race based hostile work environment; (4) she has shown sufficient evidence to establish the

23  elements of her negligent hiring claim; and (5) defendants' reckless indifference to her rights entitles

24  her to recover punitive damages.  Dkt. 48.

25    On July 3, 2008, defendants filed a reply, contending that (1) plaintiff cannot prove causation

26  where the decision-makers on her termination had no knowledge of her complaints; (2) plaintiff cannot

27  meet her burden of proving pretext on her retaliation claim because the two decision-makers in

28  plaintiff's termination had no actual knowledge of plaintiff's or Ms. Hastings' alleged complaints,

ORDER
Page - 2

plaintiff's protected conduct does not immunize her from discipline; non-Hispanics, and males and

females of different ages received discipline for policy violations; the alleged comparators were not

similarly situated to plaintiff; and Wal-Mart had a legitimate nondiscriminatory reason for terminating

plaintiff's employment; (3) plaintiffs' request for punitive damages should b e dismissed because

plaintiff has no evident of malice or indifference to federally protected rights; (4) plaintiff's negligent

hiring claim fails as a matter of law; and (5) Heidi Evan's opinion must be excluded because her

alleged expert opinion does not meet the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

509 U.S. 579 (1993).  Dkt. 51.

<u>RELEVANT FACTS</u>

In 2002, plaintiff, a Latina female, was hired to work as a cashier in the Pharmacy at Wal-Mart

Store 2550 (store 2550) in Vancouver Washington.

In August of 2004, District Manager Scott Ortolani hired defendant Michael Thanem to work

at store 2550 as the Pharmacy Manager. Dkt. 44.  At that time, plaintiff was 47 and Luwaina Hastings

was 46.  Mr. Thanem was 34; three pharmacy technicians, all women, were 36, 30, 23, and one

pharmacy technician, a woman, was of unknown age although plaintiff maintains she was younger than

plaintiff and Ms. Hastings.

Mr. Ortolani stated in his declaration that he recruited Mr. Thanem; received positive feedback

from other individuals, including pharmacists and managers with whom Mr. Thanem had worked;

interviewed him for a job opening at store 2550; and offered him the job.  Mr. Ortolani stated that,

"[d]uring the entire time that Mike worked for me, I never received any complaints about

inappropriate conduct by Mike."  *Id*. at 3.  Plaintiff has submitted evidence that, prior to working for

Wal-Mart, Mr. Thanem had been fired from Walgreen's for gross misconduct; that, before he worked

for Walgreens, he had been disciplined for putting pressure on a subordinate female employee to repay

a personal loan with sexual favors; that, in his Wal-Mart application, he had left the reasons for leaving

his prior jobs blank; and that Mr. Ortolani did not check Mr. Thanem's' previous employers for

references.

Plaintiff has submitted evidence that Mr. Thanem discussed sexual matters in the pharmacy,

made sexual comments about and to employees, his wife, and customers, (Dkt. 49-2, at 3-5) and

socialized with the younger employees after, and even during, work. (Dkt. 49-2, at 2).  Plaintiff stated that Mr. Thanem yelled and belittled plaintiff and Ms. Hastings, and otherwise treated them differently and more harshly than he treated the younger employees.  Dkt. 49-2, at 5.  Plaintiff stated in her declaration that Mr. Thanem belittled and humiliated her (Dkt. 49-2, at 3); "said he had to go to 'Latino school' to understand" her (Dkt. 49-2, at 3); said that "this is the kind of people Wal-Mart hires", when she had a line of customers (Dkt. 49-2, at 3); made comments about a medical problem she had (Dkt. 49-2, at 4); and said things to her like "hey, Spic—and span is how I want this pharmacy to look" (Dkt. 49-2, at 5, 6).

On March 28, 2005, Mr. Ortolani and Assistant Manager Cheryl Ferguson-Meade issued a written coaching to plaintiff for an inappropriate comment in the Pharmacy.  Dkt. 44, at 3-4; Dkt. 45-3, at 4-5.  Plaintiff admitted that she had made the comment. Dkt. 45-3, at 5.  On another occasion, some of the pharmacy employees, including plaintiff, brought to a wedding shower "joke presents" that were sexually explicit.  Dkt. 42, at 3 and at Exh. A.

In August of 2005, defendant Holland Ricker became manager of store 2550.   Plaintiff stated in her declaration that she complained at least three times to Mr. Ricker about workplace issues in the Pharmacy and gave him a set of handwritten notes.  Dkt. 45-5; Dkt. 45-3, at 31-34; Dkt. 49-2, at 7. The notes stated that Mr. Thanem favored the other female employees and included them in his personal life; that Mr. Thanem did not keep information confidential; that plaintiff was unhappy about her schedule; that Mr. Thanem gave other employees overtime hours; that Mr. Thanem excluded plaintiff from going out with him and some of the other employees; that Mr. Thanem made rude remarks about a customer; that "Mike doesn't treat us equal;" (Dkt. 45-3, at 33); and that Mr. Thanem told plaintiff, in front of other employees, that he would replace her if she did not stop making mistakes.  Dkt. 45-3, at 31-34.   Sometime that Fall, plaintiff's co-worker Luwaina Hastings, a Caucasian female, also provided Mr. Ricker with handwritten notes.  Dkt. 45-4, at 21-24.  Ms. Hastings' notes complained about Mr. Thanem's alleged favoritism of some of the Pharmacy employees, his socializing with certain employees, and his yelling and ridiculing Ms. Hastings for an injury. *Id.*

According to Mr. Ricker, he met with plaintiff and asked her what her notes meant to her, to

which Plaintiff responded that she was trying to be better with God by not gossiping but was having

trouble getting along with her co-workers.  Dkt. 45-5, at 6-9.  When Mr. Ricker asked plaintiff what

she could do, Mr. Ricker stated that she told him that she could try to create better relationships with

her co-workers.  Dkt. 45-5, at 8.  Mr. Ricker stated that he discussed with plaintiff how she might

improve her work relationships. Id.  Mr. Ricker testified that he was sure he followed up on the

various issues in plaintiff's and Ms. Hastings' notes.  Dkt. 45-5, at 9-10.

During the Fall or early Winter of 2005, Tamara Spek replaced Mr. Thanem as the Pharmacy

Manager of store 2550.

On December 16, 2005, Wal-Mart's Ethics hotline received an anonymous complaint alleging

inappropriate remarks on sexual topics in the Pharmacy.  Dkt. 45-5, at 13; Dkt. 49-2, at 7. The

complaint alleged that (1) Brian  stated to Kristine, "I will do you." (2) Kristine _____ said to

Pharmacist Jim _____, "Hey do you want me to do you, too."  (3) "Chris _____ said about

pharmacist Jim that he gets it on the walls." (4) "Cherry has open conversations regarding sexual

undertones."  Dkt. 45-5, at 24-25.

Mr. Ricker, as Store Manager, was responsible for investigating the ethics complaint.  He

never learned who made the anonymous complaint.  He conducted an investigation from December 14

- 27, 2005, interviewing seven pharmacy associates, including plaintiff.  Plaintiff gave a written

statement.  Dkt. 45-3, at 35-36.  By the time of the ethics complaint, Mr. Thanem had transferred to

store 5462; he was not a witness in the ethics hotline investigation.  Ms. Spek stated that, "[w]hile I

heard some unsubstantiated speculation or gossip about who might have called the hotline, I never

developed any interest in or opinion about the identity of the complainant."  Dkt. 43, at 2.

Mr. Ricker determined that (1) an associate had made comments about getting a substance on

the wall, referring to a male pharmacist getting urine on the wall by the bathroom toilet; and (2) male

and female associates had engaged in inappropriate conversations with sexual innuendos. Dkt. 45-5, at

24-27.  Three of the associates were given written coaching, on January 13, 2006, January 19, 2006,

and January 24, 2006, respectively.  Id.  Plaintiff was not disciplined.  The investigation was

completed on January 19, 2006.  Dkt. 45-5, at 27.

On January 13, 2006, Assistant Manager Ferguson-Meade and her co-manager received a

phone call letting them know that plaintiff had parked her vehicle in the customer lot rather than the associate parking lot. Dkt. 45-6, at 10. Ms. Ferguson-Meade stated in her deposition that she did not remember whether she or her co-manager took the call; who made the phone call, or whether the person identified him or herself. *Id.* Ms. Ferguson-Meade and her co-worker went to the Pharmacy and asked plaintiff to move her car into associate parking. *Id.* Ms. Ferguson-Meade stated that, when plaintiff returned to the Pharmacy, she approached two co-workers and said something to them like, "God will get even with the Evil People." *Id.* at 77. Plaintiff stated in her deposition that she did not remember if that was the exact quote. Dkt. 45-6, at 12. Pharmacy Tech Christie Murphy stated in her declaration that she believed that plaintiff directed that statement to Ms. Murphy because plaintiff thought Ms. Murphy told management that plaintiff was parked in the wrong areas. Dkt. 42, at 3. Ms. Ferguson-Meade gave plaintiff a written coaching or "Decision Day" for "causing a hostile work environment because it was gossiping and rumoring and everything in one – up in her work area, in that confined area." Dkt. 45-6, at 13. See also Dkt. 45-3, at 11. *See* Coaching for Improvement policy, Dkt. 45-8, at 13-17.

Ms. Spek, who took over from Mr. Thanem as Pharmacy Manager in the Fall or early Winter of 2005, stated in a declaration that she observed plaintiff fail to follow Wal-Mart's Prescription Release Policy that required associates to ask a customer for the customer's last name and date of birth before giving a prescription medication to the customer, and that there was an incident where plaintiff called one pharmacy customary by another pharmacy customer's name, thereby violating the Prescription Release Policy and federal law (HIPAA). Dkt. 43, at 2-3. Ms. Spek spoke with Pharmacy District Manager Tracy Mock about plaintiff's conduct; they agreed that plaintiff should be terminated. Id. at 3. On January 16, 2006, Ms. Spek met with plaintiff, along with Ms. Ferguson-Meade. Dkt. 43, at 3. Ms. Spek stated that "Ms. Ferguson-Meade attended because Wal-Mart requires a witness to attend coaching meetings and because Ms. Ferguson-Meade had been planning to meet Ms. Herling to review the Decision Day coaching with her." *Id.* Ms. Ferguson-Meade signed the Exit interview on January 16, 2006. Dkt. 45-3, a t 26. Ms. Spek stated that, during the time she supervised plaintiff, she had no knowledge that plaintiff had complained to anyone about any racist or sexist comments or harassment. Dkt. 43, at 4. Whether Ms. Ferguson-Meade and Ms. Spek knew of

1  plaintiff's complaints to Mr. Ricker, or knew that she was the person who had initiated the hotline

2  investigation, is disputed.  There are also disputed facts as to whether other employees were not

3  disciplined for the same or similar behavior, or whether the reasons for terminating plaintiff were not

4  sufficient to justify termination.

5  SUMMARY JUDGMENT STANDARD

6          Summary judgment is proper only if the pleadings, the discovery and disclosure materials on

7  file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

8  entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is entitled to judgment

9  as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element

10  of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v.*

11  *Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken

12  as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec.*

13  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific,

14  significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).

15  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the

16  claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

17  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical*

18  *Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

19          The determination of the existence of a material fact is often a close question.  The court must

20  consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

21  preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect. Service*

22  *Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

23  nonmoving party only when the facts specifically attested by that party contradict facts specifically

24  attested by the moving party.  The nonmoving party may not merely state that it will discredit the

25  moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the

26  claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).  Conclusory, non

27  specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  *Lujan*

28  *v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

DISCUSSION

*1. Retaliation under Title VII, 42 U.S.C. § 1981, and RCW 49.60.210*

Defendants contend that plaintiff cannot establish a *prima facie* case of retaliation because Wal-Mart had a legitimate reason to terminate her employment for violating its Prescription Release Policy, and because plaintiff cannot show that the decision was pretextual. Plaintiff contends that her firing was in retaliation for complaints she made about inappropriate sexual comments and behavior, and about derogatory comments about her ethnicity.

It is an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. §§ 2000e-2(a)(1).

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

42 U.S.C. § 1981 encompasses claims for retaliation. *CBOCS West, Inc. v. Humphries*, 128 S.Ct. 1951 (2008).

The WLAD prohibits retaliation engaging in a protected activity. RCW 49.60.210. Washington courts look to federal law when analyzing WLAD retaliation claims. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir.2002); *Graves v. Dep't of Game*, 76 Wash.App. 705, 887 P.2d 424, 428 (1994).

"The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004); *See e.g. Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less

1   than three months after the protected activity); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32

2   (9th Cir.1986) (concluding that there was adequate evidence of a causal link where the retaliatory

3   action occurred less than two months after the protected activity).

4       A review of the record shows that there are multiple issues of disputed fact that preclude

5   summary judgment on plaintiff's retaliation claims, including whether Mr. Ricker appropriately

6   responded to plaintiff's complaints; whether Ms. Ferguson-Meade and Ms. Spek were aware of

7   plaintiff's complaints, including the hotline complaint; the timing of disciplinary actions and

8   termination; and whether the reasons for giving plaintiff a Decision Day and for terminating her where

9   pretextual. *See Quantz v. Edwards*, 264 Fed.Appx. 625, 628, 2008 WL 176373 (C.A.9 (Wash.)),

10  quoting *Ulrich v. City & County of San Francisco,* 308 F.3d 968, 979 (9th Cir.2002)("As with proof

11  of motive in other contexts, this element of a First Amendment retaliation suit may be met with either

12  direct or circumstantial evidence ... and involves questions of fact that normally should be left for

13  trial.").

14      *2. Hostile Work Environment*

15      Defendants contend that plaintiff's hostile work environment claims under 42 U.S.C. § 1981,

16  Title VII, and RCW 49.60 should be dismissed, arguing that the actions plaintiff complained of were

17  not severe or pervasive; they were not because of her race or her gender; and they were not

18  unwelcome.

19      Courts have interpreted Title VII to bar not only discrimination as it is traditionally understood,

20  but also hostile work environment harassment.  To prevail on a Title VII hostile workplace claim

21  premised on either race or sex, a plaintiff must show (1) that she was subjected to verbal or physical

22  conduct of a racial [or sexual] nature; (2) that the conduct was unwelcome; and (3) that the conduct

23  was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an

24  abusive work environment. *Vasquez v. County of Los Angeles*, 349 F.3d, 634, 642 (9th Cir. 2003)

25      Not all workplace disputes fall within the purview of Title VII. The severe and pervasive prong

26  ensures that only truly harassing behavior is deemed unlawful. To determine whether conduct is severe

27  and pervasive, the court looks at the context of the alleged harassment to determine its frequency and

28  severity, whether it is physically threatening or humiliating, and the extent to which it unreasonably

1   interferes with the employee's work performance. *Vasquez v. County of Los Angeles*, 349 F.3d, 634,

2   642 (9th Cir. 2003). The working atmosphere must be both subjectively and objectively abusive. *Id.*

3   Merely an offensive utterance is insufficient. *Id.*

4         A review of the record shows that there are multiple issues of disputed fact that preclude

5   summary judgment on plaintiff's hostile work environment claim, including the severity and

6   pervasiveness of the alleged harassing behavior based upon sex and national origin, whether the

7   conduct was unwelcome, and whether the conduct created an abuse environment.

8         *3.   Negligent Hiring*

9         Defendants contend that plaintiff cannot establish the elements of a claim for negligent hiring.

10        An employee may be liable for negligent hiring of an employee if the employer knew, or in the

11  exercise of ordinary care, should have known of the employee's unfitness before the incident, and hiring

12  the employee was the proximate cause of the plaintiff's injuries. *Betty Y v. Al-Hellou*, 98 Wn.App.

13  146, 148-49 (1999).

14        Defendants moved to strike the opinion of Heidi Evans on the basis that her opinion does not

15  meet the *Daubert* standard for expert testimony.  Dkt. 51.  Whether Ms. Evans' opinion may be

16  admissible at trial may be determined at a later point.  The court has accorded the proper weight to Ms.

17  Evans' opinion, which, the court notes, was not necessary to the determination whether there are

18  outstanding issues of fact.  Accordingly, defendants' motion to strike the opinion of Ms. Evans (Dkt.

19  51, at 14-16) is **DENIED**.

20        A review of the record shows that there are multiple issues of disputed fact that preclude

21  summary judgment on plaintiff's negligent hiring claim, including whether Mr. Ortolani exercised

22  ordinary care in the hiring process, whether Mr. Thanem was unfit for the job, and whether Mr.

23  Thanem's unfitness was the cause of plaintiff's injuries.

24        *4.   Punitive Damages*

25        Defendants contend that plaintiff cannot show the heightened standard required for punitive

26  damages, and that liability cannot be imputed to Wal-Mart because of Wal-Mart's good faith efforts to

27  comply with federal law.

28        A Title VII plaintiff "may recover punitive damages against a respondent (other than a

1    government, government agency or political subdivision) if the complaining party demonstrates that the

2    respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless

3    indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

4         Punitive damages should be awarded only where an employer has acted with malice or reckless

5    indifference to the plaintiff's federally protected rights. *Kolstad v. American Dental Assn.*, 527 U.S.

6    526, 535 (1999).  In the context of Title VII punitive damages, an employee's conduct must be imputed

7    to his employer to give rise to punitive damages liability. *Id.* at 539. Agency principles limit vicarious

8    liability for punitive damages awards. *Id.* at 541-44; *see Costa v. Desert Palace, Inc.,* 299 F.3d 838,

9    864 (9th Cir.2002), *aff'd* 539 U.S. 9084 (2003); *Swinton v. Potomac Corp.,* 270 F.3d 794, 810 (9th

10   Cir.2001); *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 516 (9th

11   Cir.2000).  An employer has a good faith defense to vicarious liability for discrimination if it undertakes

12   appropriate steps to prevent and correct discriminatory conduct by its employees. *Swinton v. Potomac*

13   *Corp.,* 270 F.3d 794 (9th Cir.2001). If the harasser is a supervisor, the employer may be held

14   vicariously liable, but if the harasser is a coworker, the plaintiff must prove that the employer knew or

15   should have known of the harassment and did not take adequate steps to correct it. *Id.* at 803.

16        Defendants contend that plaintiff cannot show the requisite mental state or reckless indifference

17   by any of Wal-Mart's employees sufficient to justify an award of punitive damages.  Wal-Mart contends

18   it has numerous policies and procedures that prohibit harassment, discrimination and retaliation; and

19   that it took steps to educate and train its employees and managers on these policies and procedures.

20   However, there are outstanding issues of fact as to whether supervisory personnel implemented these

21   policies, or whether they ignored the situation and then retaliated against an employee for requesting

22   that they deal with the problems.  The court should deny defendants' motion to dismiss the punitive

23   damages claim.

24        Therefore, it is hereby

25        **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 40) is **DENIED**.

26        The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any

27   party appearing *pro se* at said party's last known address.

28        DATED this 7th day of July, 2008.

ROBERT J. BRYAN
United States District Judge

ORDER
Page - 12